**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:RJN
F.#2011R00633

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 25, 2012

<u>By Fax and ECF</u>

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  <u>United States v. Nezer Papraniku</u>
           <u>Criminal Docket No. 12 M 00045</u>

Dear Judge Pohorelsky:

      The government respectfully submits this letter in opposition to the defendant's application for bail pending trial in the above-captioned matter, submitted on January 24, 2012. The defendant, Nezer Papraniku ("Papraniku"), was a member of a large-scale cocaine distribution conspiracy between approximately 2005 and 2012. Under the law, the defendant is presumed to be a danger to the community and a flight risk. It is his burden to rebut this presumption, which he has failed to do. Thus, the government respectfully submits that Papraniku should continue to be detained pending trial.

I.    <u>Summary of the Charges</u>

      On January 16, 2012, the defendant was arrested pursuant to an arrest warrant authorized by the Honorable Ramon E. Reyes on or about January 13, 2012, that charged him with conspiracy to distribute over five kilograms of cocaine, in violation of 21 U.S.C. § 846 and with access device fraud, in violation of 18 U.S.C. § 1029(a)(1). The government respectfully refers the Court to the affidavit in support of the arrest warrant ("Arrest Warrant"), attached as Exhibit A, for a more detailed description of the defendant's involvement in these offenses.

      To summarize, between 2005 and 2011, Papraniku was involved in the distribution of over five kilograms of cocaine with coconspirator Lulzim Kupa ("L. Kupa") (identified in the

Arrest Warrant as "CC1")[1] and others.  Together with L. Kupa, Papraniku supplied cocaine, which was transported from other states including California, via mail services such as UPS and Federal Express, to cocaine distributors in Staten Island, New York, and elsewhere.  In an effort to conceal their involvement in the cocaine distribution scheme, L. Kupa and Papraniku paid other individuals, often individuals working as doormen in New York City apartment buildings, to accept delivery of the packages containing the cocaine.  After the packages were received, Papraniku would deliver the cocaine to distributors including a cooperating witness ("CW1") and a confidential source ("CS") who were involved in distributing between four and eight kilograms of cocaine per month with coconspirators Joseph Sclafani, Neil Lombardo, Afrim Kupa (L. Kupa's brother) and others.[2]  CW and CS have advised that L. Kupa relied on Papraniku to make the deliveries, in an apparent effort to avoid detection by law enforcement agents.  Between 2005 and 2011, Papraniku and L. Kupa supplied approximately two kilograms of cocaine to CS and between five and ten kilograms of cocaine to CW.  Moreover, in approximately August 2011, Papraniku and L. Kupa were expecting a shipment of between seven and ten kilograms of cocaine, but the shipment was returned because the individual expected to receive the package was not present when the delivery was attempted by the mail service.

      At the time of his arrest, Papraniku was en route to the airport to travel to Arizona.  His bag, which was searched pursuant to an inventory search in accordance with the regular procedures of the Drug Enforcement Administration, contained $20,000 and a UPS receipt for a package that was delivered to Arizona.  The receipt indicated that the package contained a dish set, and the sender was listed as "Joseph Stein," but when the package was searched pursuant to a search warrant obtained in the

---

    [1]    On January 16, 2012, Lulzim Kupa was also arrested on the same charges pursuant to an arrest warrant authorized by the Honorable Ramon E. Reyes, Jr. on or about January 13, 2012.  A copy of the affidavit in support of the arrest warrant for Lulzim Kupa is attached as Exhibit B.

    [2]    A. Kupa, Lombardo and Sclafani are indicted for cocaine distribution and cocaine distribution conspiracy in United States v. Afrim Kupa, Keith Levine, Neil Lombardo and Joseph Sclafani, 11 CR 345 (SLT).

2

District of Arizona on or about January 20, 2012, DEA agents recovered approximately $100,0000.[3]

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." A finding of dangerousness must be supported by clear and convincing evidence. United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The factors to be considered in determining whether the applicable standard has been met include: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. See Title 18, United States Code, Section 3142(g). As set forth below, these factors support detention in this case.

## III. The Defendant Poses a Danger to the Community

### A. The Nature and Circumstances of the Crimes

As set forth above, Papraniku is responsible for distributing large quantities of cocaine in Brooklyn, New York, Staten Island, New York, and elsewhere, between approximately 2005 and 2011. He is charged with conspiracy to distribute and possess with intent to distribute, over five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(ii)(II) and 846. This crime carries a mandatory

---

[3] The return address listed for Joseph Stein is a real address in Staten Island, New York, but according to database checks performed by DEA agents, nobody by that name lives at the listed address. Moreover, DEA agents have identified two Federal Express receipts from 2011 listing Joseph Stein as the sender, for packages that were sent to California. Each receipt describes the contents of the package as some form of dishware.

minimum sentence of ten years' imprisonment and thus, carries a presumption in favor of detention.  21 U.S.C. § 841(b)(1)(A)(ii)(II).[4]  He is also charged with access device fraud, in violation of 18 U.S.C. § 1029(a)(1), for his role in producing and selling counterfeit credit cards.

    B.    <u>The Evidence is Strong</u>

The evidence against Papraniku includes the testimony of cooperating witnesses who purchased cocaine from L. Kupa and Papraniku on multiple occasions between 2005 and 2011 and received credit cards that Papraniku fraudulently produced, or merchandise purchased with such credit cards.  Their testimony is corroborated by, among other things, documentary evidence; physical evidence, including the $100,000 seized from the UPS shipment described above and cocaine seized, pursuant to search warrants issued in the United States District Court, Eastern District of New York, from the residences of Papraniku's coconspirators; surveillance conducted by law enforcement agents; and consensual recordings made by CW and CS of Papraniku's coconspirators.

    C.    <u>The History and Characteristics of the Defendant</u>

Although Papraniku does not have any prior felony convictions, as set forth in the arrest warrant, he is a close criminal associate of L. Kupa.  Indeed, when L. Kupa moved to Connecticut after his release from prison in 2010, Papraniku engaged in the daily activities of the drug distribution operation in an effort to help conceal L. Kupa's involvement from law enforcement agents.  In the event that Papraniku is released pending trial in this matter, there is a substantial risk that Papraniku will continue to facilitate the distribution of cocaine and marijuana for L. Kupa.  The risk is particularly acute because Papraniku's suppliers in Arizona and California have not been identified.

    D.    <u>The Seriousness of the Danger Posed by Papraniku's Release</u>

The defendant argues that he does not pose a danger to the community because he is not alleged to be involved in acts of violence.  However, the dangers of the national and international

---

[4]   In addition, information provided by CW and CS indicate that Papraniku is also responsible for importing large quantities of marijuana from states such as Arizona.

4

drug trade and of drug use are beyond question. In relation to the Bail Reform Act, Congress noted that defendants pose a danger to the community not only when they commit acts of violence, but when it is likely that they will commit even non-violent crimes that are detrimental to the community. See Senate Report at 3195 ("language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence"). In light of that Congressional finding, in United States v. Salerno, 631 F. Supp. 1364, 1371 (S.D.N.Y. 1986), order vacated, 794 F.2d 64 (2d Cir.), order reinstated, 829 F.2d 345 (2d Cir. 1987), the court held:

> In light of Congress' direction that "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate" . . . .

See also United States v. Colombo, 777 F.2d 96, 99 (2d Cir. 1985).

If released, it is likely that Papraniku will continue to distribute illegal drugs, including large quantities of cocaine, in order to maintain the defendants' lucrative drug trafficking business while L. Kupa remains incarcerated. The nature of the operation would permit Papraniku to continue to facilitate the importation and distribution of illegal drugs, even if conditions such as electronic monitoring were to be imposed. As set forth above, Papraniku arranges for the drugs to be transported through mail services to individuals paid to accept the deliveries. Moreover, CW and CS have advised that although Papraniku usually delivered the cocaine personally, he sometimes relied on another coconspirator, who remains at liberty. If confined to the home, Papraniku could easily rely on this individual and others to distribute the cocaine after it is delivered by mail to those paid to receive the packages. Thus, Papraniku could continue to facilitate the scheme by phone, without leaving his residence. Accordingly, although he is not charged with a crime of violence, Papraniku's release nonetheless poses a danger to the community.

IV.     The Defendant Is a Flight Risk

Papraniku faces a mandatory minimum sentence of ten years because he is responsible for the distribution of well over five kilograms of cocaine.  21 U.S.C. § 841(b)(1)(A)(ii)(II).  Based on the amount of cocaine involved in the offense, Papraniku's estimated range of imprisonment under the United States Sentencing Guidelines is at least 121 to 151 months' imprisonment.  The significant sentence he faces gives Papraniku substantial incentive to flee.  See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).  Furthermore, he has the means to flee, as evidenced by the $20,000 with which he was traveling on the day of his arrest as well as the approximately $100,000 that he delivered through UPS to associates in Arizona.  Moreover, his prior involvement in access device fraud further demonstrates that he has the means and methods to flee.  Finally, although he has presented a substantial bail package, the package he offers does not overcome the presumptive risk of flight in this case against the backdrop of the defendant's substantial means and ability to flee.

V.      Conclusion

For all of the foregoing reasons, the Court should enter a permanent order of detention for the defendant Nezer Papraniku.

                                   Respectfully submitted,

                                   LORETTA E. LYNCH
                                   United States Attorney

                    By:     _____/s/_____
                            Rachel J. Nash
                            (718) 254-6072

cc:     Clerk of Court (by ECF)